**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PREP SOLUTIONS LTD., | § | Civil Action No. 2:23-cv-211-JRG |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| TECHONO LTD., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**RESPONSE IN OPPOSITION TO DEFEDANT ELEPHANT PROJECTS, LTD.'S
MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................3

III.    LEGAL STANDARD...............................................................................................4

IV.     ARGUMENT ...........................................................................................................5

        A.      The Court May Exercise Specific Personal Jurisdiction Over
                Elephant Projects. ......................................................................................5

                1.      *Elephant Projects has established minimum contacts*
                        *with Texas by selling and offering for sale infringing*
                        *products in the forum through its interactive*
                        *commercial website.*..................................................................6

                2.      *Alternatively, Elephant Projects has established*
                        *minimum contacts with the United States to subject it*
                        *to personal jurisdiction under Rule 4(k)(2).* ...........................12

        B.      If the Court finds that Prep Solutions has not established a
                prima facie case of personal jurisdiction over Elephant
                Projects based upon the current record, it should grant Prep
                Solutions leave to conduct jurisdictional discovery..............................14

V.      CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Adams v. Unione Mediterranea Di Sicurta*,
    364 F.3d 646 (5th Cir. 2004) ...................................................................13

*Admar Int'l v. Eastrock, LLC*,
    18 F.4th 783 (5th Cir. 2021) .................................................................10

*Ainsworth v. Moffett Eng'g, Ltd.*,
    716 F.3d 174 (5th Cir. 2013) ..............................................................5, 11

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000) ..................................................................5

*Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*,
    106 F. Supp. 2d 895 (N.D. Tex. 2000) ................................................10

*Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*,
    822 F. Supp. 2d 657 (E.D. Tex. 2011) .................................................13

*DeJesus v. BRP US Inc.*,
    No. 18-cv-0010-RP, 2019 WL 2563844 (W.D. Tex. Mar. 25, 2019) ......................7

*Dixon v. Toyota Motor Credit Corp.*,
    794 F.3d 507 (5th Cir. 2015) ..................................................................6

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
    948 F.3d 289 (5th Cir. 2020) ..................................................................5

*ECAP Holdings, LLC v. Quixotic Farming,LLC*,
    No. 18-cv-2193-L, 2019 WL 4748126 (N.D. Tex. Sept. 30, 2019) ......................15

*Fintech Fund, F.L.P. v. Horne*,
    836 F. App'x 215 (5th Cir. 2020) ...........................................................5

*Fintech Fund, FLP v. Horne*,
    327 F. Supp. 3d 1007 (S.D. Tex. 2018) ................................................12

*Georgiou v. Battery Junction Corp.*,
    No. 21-cv-00418-O, 2022 WL 20210192 (N.D. Tex. Dec. 15, 2022) ......................7

*Harvest Nat. Res., Inc. v. Garcia*,
    No. CV H-18-483, 2018 WL 2183968 (S.D. Tex. May 11, 2018) .........................14

*Latshaw v. Johnston*,
    167 F.3d 208 (5th Cir. 1999) ..................................................................5

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009).................................................................................15

*Mink v. AAAA Dev. LLC*,
190 F.3d 333 (5th Cir. 1999) .................................................................................5

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) ...............................................................................13

*Naughtys LLC v. Does 1-580*,
No. 21-cv-492-O, 2022 WL 818993 (N.D. Tex. Mar. 3, 2022) .......................10, 11

*Patterson v. Aker Sols. Inc.*,
826 F.3d 231 (5th Cir. 2016) ...............................................................................12

*Pervasive Software, Inc. v. Lexware GmbH & Co.*,
688 F.3d 214 (5th Cir. 2012) ...............................................................................10

*Shippitsa Ltd. v. Slack*,
No. 18-cv-1036-D, 2019 WL 3304890 (N.D. Tex. July 23, 2019) ................7, 9, 11

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
758 F. Supp. 2d 366 (N.D. Tex. 2010) ...........................................................7, 10, 11

*Trois v. Apple Tree Auction Ctr., Inc.*,
882 F.3d 485 (5th Cir. 2018) ..............................................................................4, 5

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
99 F.3d 717 (5th Cir. 1996) .................................................................................12

*Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997).....................................................................6, 7

**Other Authorities**

Federal Rule of Civil Procedure 4(k)(2) .....................................................1, 12, 13, 14

iii

Plaintiff Prep Solutions Ltd. submits this response in opposition to Defendant Elephant Projects' Motion to Dismiss the Complaint ("Motion").

## I.    INTRODUCTION

Defendant Elephant Projects Ltd.'s Motion to Dismiss, arguing that it is not subject to personal jurisdiction in Texas, should be denied. Prep Solutions has met its burden of establishing that Elephant Projects is subject to specific-personal jurisdiction in Texas or subject to personal jurisdiction under the federal long-arm statute—Federal Rule of Civil Procedure 4(k)(2).

Elephant Projects' sole argument for why it is not subject to personal jurisdiction is that it lacks the minimum contacts with Texas necessary to satisfy due process. Elephant Projects claims it is a foreign company located in India that operates a website available worldwide without advertising into specific localities. To this end, Elephant Projects asserts that its only contact with Texas is a single sale made to Prep Solutions through its website.

This is not true. In the past two years, an estimated 2.6 million U.S. internet users have visited Elephant Projects' English-language website which sells the products that are the basis for Prep Solutions' copyright-infringement claims in this case. Such a high volume of traffic to its website almost certainly resulted in tens of thousands of sales to U.S. residents—including those residing in Texas. Some subset of these sales have actually occurred in Texas—which Elephant Projects concedes at least one. However, Elephant Projects is the only entity with access to its sales data. Elephant Projects also knows it is selling products in the United States as evidenced by the LinkedIn page for its website, which advertises "US Testprep" as one of its "specialties." Elephant Projects' knowledge that it was selling to the U.S. market, combined with the fact that it placed no geographical restrictions on its website, means that sales to Texas residents were foreseeable. This is sufficient, under the law, to establish minimum contacts with Texas to subject

Elephant Projects to this Court's jurisdiction.

Alternatively, Elephant Projects is subject to personal jurisdiction under Rule 4(k)(2), which establishes personal jurisdiction over a defendant for claims arising under federal law when the defendant has established minimum contacts with the United States as a whole. As noted, Elephant Projects has significant and intentional business contacts with the United States. Moreover, the estimated 2.6 million visits its website receives from the United States accounts for over one third of the website's total traffic and more traffic than any other single country. An estimated 60% of this U.S. traffic originates from search engines, which suggests that Elephant Projects may have optimized search engine results to draw more U.S. traffic to its website. And Elephant Projects' website is also hosted in the United States, which benefits U.S. internet users.

Simply put, Elephant Projects has targeted the U.S. market, including Texas, by knowingly selling its products in the United States—without restriction—and tailoring its business (and likely search engine results) to maximize U.S. sales. Given the volume of business Elephant Projects does in the United States (a fact which it does not deny), along with its efforts to maximize that business (another fact which it also does not deny), it should have reasonably anticipated being called to a U.S court to answer for its online activities, particularly a court in the nation's second most populous state. Had Elephant Projects wanted to avoid being haled into this Court based upon acts it purposefully directs at the United States, it could have simply set up geographic restrictions on its website to block U.S. or Texas residents from accessing it or making purchases—not only did it not do so, it took affirmative steps to promote its website to users in the United States and claims US Testprep" as one of its "specialties." By choosing to profit from the U.S. market, Elephant Projects subjected itself to the jurisdiction of U.S. courts, including this one.

In summary, the allegations in the Complaint, as well as the supporting evidence submitted

by Prep Solutions, make out a prima facie case that Elephant Projects is subject to this Court's jurisdiction. Therefore, Elephant Projects' Motion should be denied. If the Court has any doubt, however, Prep Solutions should be permitted to take jurisdictional discovery before the Court were to rule on Elephant Project's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

Prep Solutions is in the business of providing proprietary study materials to those preparing for certification exams in the information technology ("IT") industry. Dkt. 1 (Complaint) ¶ 17. These study materials include original practice tests covering the subject matter of various certification exams. *Id.* ¶ 18. Prep Solutions owns registered copyrights to and is the only authorized distributor for these original practice tests. *Id.* ¶¶ 19-20.

Defendant Elephant Projects is also in the business of providing online study materials for IT certification exams. *See* Dkt. 10-1 (Chaudhry Decl.) at ¶¶ 1-2. Elephant Projects owns and operates the website testpreptraining.com and allegedly runs its operations solely out of India. Dkt. 10 at 4. Customers can register for an account on testpreptraining.com and purchase various test prep question-and-answer sets using a credit card or PayPal account. *Id.* Once a purchase is made, the customer can access the purchased test questions through the website. *Id.* 4-5. The website also includes a "Contact Us" page where customers can email the site administrators for assistance.[1]

The testpreptraining.com website is available worldwide, including in the United States, without geographic restriction. *See id.* at 1. Over the past two years, testpreptraining.com has received an estimated 7.7 million visits, with more than 2.6 million of these visits coming from users in the United States. Ex. 1 (Tarasevich Decl.) ¶ 9, Attach. 3. In all, testpreptraining.com receives more traffic from the United States than any other country, and U.S. traffic accounts for

---

[1] *See* https://www.testpreptraining.com/contact-us (last visited Sept. 21, 2023).

more than one third of testpreptraining.com's total traffic. *Id.* Furthermore, an estimated 60% of this U.S. traffic originates from search engines. *Id.* Evidence of favorable search engine treatment can be seen in the following Google searches (run from Texas) that list testpreptraining.com in the top five results: "IT test prep questions" (first non-sponsored result), "test prep questions" (third result), and "test prep" (fifth non-sponsored result). Ex. 2 (Jarrett Decl.).

Along with the high volume of traffic originating from the United States, Elephant Projects has taken other steps to service the U.S. market. For example, the LinkedIn page for testpreptraining.com advertises "U.S. Testprep" as one of the website's "specialties," and the course list on the testpreptraining.com homepage provides a link for "USA Tests Courses," which has historically included training courses specific to tests conducted in the United States.[2] *See* Ex. 2. Elephant Projects has also registered the domain name for its website with GoDaddy Inc., a company headquartered in Arizona. Ex. 1, Attach. 1. And the testpreptraining.com website is hosted by Cloudflare, Inc., a company based in San Francisco, California, which is also where the domain name service (DNS) servers for testpreptraining.com are located. *Id.*, Attach. 2.

On May 10, 2023, Prep Solutions sued Defendant Elephant Projects and others for copyright infringement. *See* Dkt. 1. Specifically, Prep Solutions alleged that Elephant Projects has willfully infringed Prep Solutions' registered copyrights by unlawfully distributing through testpreptraining.com three of Prep Solutions' copyrighted practice tests. *Id.* ¶¶ 23-24, 91-108.

## III.   LEGAL STANDARD

"[T]he party seeking to assert [personal] jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Trois v. Apple Tree Auction Ctr.,*

---

[2] *See* USA Tests, testpreptraining, https://www.testpreptraining.com/usa-tests-courses/[https://web.archive.org/web/20230325080241/https://www.testpreptraining.com/usa-tests-courses] (last visited Sept. 20, 2023).

*Inc.*, 882 F.3d 485, 488 (5th Cir. 2018) (cleaned up). A court may consider the "well-pleaded allegations of the complaint" and "factual showings made by way of depositions and affidavits." *Id.* Thus, the Court "must accept the plaintiff's uncontroverted allegations . . . and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (cleaned up).

## IV.    ARGUMENT

### A.    The Court May Exercise Specific Personal Jurisdiction Over Elephant Projects.

This Court may exercise specific-personal jurisdiction over Elephant Projects based on the allegations laid in the Complaint and evidence Prep Solutions has provided. In the Fifth Circuit, "specific personal jurisdiction is a claim-specific inquiry." *Trois*, 882 F.3d at 489. "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 220 (5th Cir. 2020) (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)).

Ultimately, "[t]o comport with due process, the defendant's conduct in connection with the forum state must be such that it should reasonably anticipate being haled into court in the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "In cases involving a product sold or manufactured by a foreign defendant, this Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (cleaned up).

In moving to dismiss the Complaint, Elephant Projects focuses its arguments solely on the first prong of the specific-jurisdiction analysis, arguing that it lacks minimum contacts with Texas, or the United States as a whole, necessary to subject it to this Court's jurisdiction.[3] But as explained below, Elephant Projects has knowingly sold, and continues to offer for sale, infringing products in Texas and the United States through its interactive, commercial website testpreptraining.com. Based on Elephant Projects' demonstrated efforts to profit from the U.S. market—the country that accounts for the largest volume of its web traffic—it reasonably should have foreseen being called into a court of the second most populous U.S. state as a result of its online activities.

### 1. Elephant Projects has established minimum contacts with Texas by selling and offering for sale infringing products in the forum through its interactive commercial website.

When specific jurisdiction is based on online interactions through an internet website, courts in the Fifth Circuit apply the sliding-scale framework set forth in *Zippo Manufacturing. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). The Zippo framework requires courts to assess the level of interactivity of the defendant's website and dictates the outcome of the personal jurisdiction analysis depending on which of these three categories the website falls into: "(1) where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; (2) where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper; and (3) where a website falls in between, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the

---

[3] Elephant Projects has not addressed the second and third factors of the specific-personal jurisdiction analysis and has thus waived any argument that these factors are not satisfied. *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived.")

[w]ebsite' to decide whether the website establishes minimum contacts with a forum." *Shippitsa Ltd. v. Slack*, No. 18-cv-1036-D, 2019 WL 3304890, at *4 (N.D. Tex. July 23, 2019) (quoting *Mink*, 190 F.3d at 336).

The parties agree that Elephant Projects' testpreptraining.com website falls into the third *Zippo* category. Websites that fall into this category can support the exercise of personal jurisdiction if they are sufficiently interactive and facilitate the exchange of commercial information, and the plaintiff "offer[s] evidence or non-conclusory allegations that Texas residents have actually interacted with the website." *DeJesus v. BRP US Inc.*, No. 18-cv-0010-RP, 2019 WL 2563844, at *4 (W.D. Tex. Mar. 25, 2019).

Federal courts in Texas have found interactive commercial websites create minimum contacts with a forum when customers can place orders or interact with sales staff or customer service personnel through the website, and residents of the forum interacted with the website. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 376 (N.D. Tex. 2010) (exercising personal jurisdiction where defendant operated website through which "residents could ask questions via live chat, place orders, and continue communicating with the staff to follow up on shipping and payment" and there were two admitted online sales to Texas residents); *Shippitsa Ltd.*, 2019 WL 3304890, at *4 (exercising jurisdiction where defendant's website invited users to "ORDER NOW," offered free shipping to anywhere in the world, allowed visitors to track and follow up on orders, and provided a "Chat" interface that allowed visitors to ask questions about defendant's products); *Georgiou v. Battery Junction Corp.*, No. 21-cv-00418-O, 2022 WL 20210192, at *3 (N.D. Tex. Dec. 15, 2022) (exercising personal jurisdiction where plaintiff, located in Texas, offered evidence that it bought one infringing product from defendant's website and evidence of other sales to Texas residents).

Here, Elephant Projects has established minimum contacts with Texas. Its testpreptraining.com website is highly interactive and to a higher degree than the examples cited above. Customers on the website can purchase and access practice exam files and contact customer service representatives. In addition, the website offers Business Plans that include "Premium Support."[4] Based on the estimated U.S. web traffic for the website and Texas's ratio of the U.S. population, a substantial number of Texas residents likely interacted with the website. And Elephant Projects potentially made several thousand sales to Texas residents during the infringement period, which plausibly included purchases of the infringing exams, as one of the infringing exams is listed under "Popular Exams" on the testpreptraining.com homepage.[5]

Elephant Projects does not contend that its website is not interactive. Rather, it argues that it is not subject to this Court's jurisdiction because its only contact with Texas that Prep Solutions references in the Complaint to support jurisdiction is a single sale made to agents of Prep Solutions. Dkt. 10 at 1, 5-8. Further, Elephant Projects argues that it could not have "known" of any sales to Texas residents or "directed" its activity into Texas because it does not ask customers to provide physical addresses when making a purchase on its website. *Id.* 4, 8. All of these arguments fail.

First, Elephant Projects mischaracterizes Prep Solutions' jurisdictional allegations. Prep Solutions' did not allege in the Complaint that Elephant Projects made only one sale in Texas. Rather, Prep Solutions alleged that Elephant Projects and the other named Defendants "direct business activities toward consumers throughout the United States, including within the State of Texas and this District, through at least their fully interactive commercial websites," Dkt. 1 ¶ 15.

---

[4] *See* https://www.testpreptraining.com/business/ (last visited Sept. 21, 2023).

[5] The link to the MS-900 exam on the testpreptraining.com homepage is to a sample of 10 free test questions that includes a link to purchase the full exam that contains the infringing questions. *See* https://www.testpreptraining.com/microsoft-365-fundamentals-ms-900-free-practice-test     (last visited Sept. 21, 2023).

These "business activities" clearly include selling infringing products through the Defendants' commercially interactive websites. *See id.* ¶ 16, 24. Elephant Projects admits that its website is available worldwide and acknowledges one sale in Texas. Prep Solutions did not allege a specific number of sales to Texas residents because, as Elephant Projects knows, only it and its payment processors have information for the specific customers who have made purchases from testpreptraining.com.

But even without access to the sales information under Elephant Projects' control, Prep Solutions has a reasonable basis to allege that Elephant Projects made many sales to Texas residents. First, Elephant Projects concedes that customers anywhere in the world, including Texas, can access and purchase test questions from its website, including the infringing question sets. As noted above, over the last two years, testpreptraining.com has received an estimated 2.6 million visits from users in the United States. When considering that Texas accounts for 8.9% of the total U.S. population of 2020[6] and the average e-commerce conversion rate is 3.65% (the percentage of site visitors making a purchase),[7] a conservative estimate puts the number of sales to Texas residents at around 350 per month, and 3% of testpreptraining.com's total global sales.[8]

Federal courts in Texas have found that similar rates of sales to Texas residents and even

---

[6] *Texas Demographic Trends and Projections and the 2020 Census*, Texas Demographic Center, https://demographics.texas.gov/Resources/Presentations/OSD/2021/2021_01_29_MexicanAmeri canLegislativeLeadershipFellowship.pdf.

[7] *Average ecommerce conversion rate benchmarks*, Adobe Experience Blog, https://business.adobe.com/blog/basics/ecommerce-conversion-rate-benchmarks (last visited Sept. 21, 2023).

[8] The estimated number of Texas sales per month for testpreptraining.com is based on the following:

> 2,600,000 (number of U.S. visitors for the last two years) x .089 (Texas's percentage of U.S. population) x .0365 (e-commerce conversion rate) = 8,446.1 sales /24 (months) = 351.9 sales/month

rates as low as 0.5% or as few as *two* actual sales to Texas residents will establish the requisite minimum contacts to satisfy due process. *See, e.g.*, *Shippitsa Ltd.*, 2019 WL 3304890, at *5 (finding that sales to Texas constituted 10% of defendant's U.S. sales of PhenQ; 3% of its worldwide sales of PhenQ; 8.18% of its U.S. sales of Ph.375; and 4.73% of its worldwide sales of Ph.375); *Tempur-Pedic*, 758 F. Supp. 2d at 375 (exercising personal jurisdiction on the basis of *two* admitted online sales to Texas residents); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 898, 901-02 (N.D. Tex. 2000) (exercising personal jurisdiction over company on basis of online sales to Texas, which constituted 0.5% of defendant's total sales).

Further, Elephant Projects' claim that it could not have "known" of sales to Texas residents or "directed" its activity into Texas because it does not request physical addresses for its customers is inapposite . Elephant Projects knew it was selling to the U.S. market because it admits that "US Testprep" is one of its "specialties," Ex. 2, and its website contains no geographical restrictions, Dkt. 10 at 1. Even assuming that Elephant Projects has willfully blinded itself to the fact that sales occurred in Texas, this does not erase these sales or undo the steps Elephant Projects took to avail itself the U.S. market, of which Texas is a substantial part.

The cases Elephant Projects cites to support its supposed lack of minimum contacts are also distinguishable. In *Admar Int'l v. Eastrock, LLC*, 18 F.4th 783 (5th Cir. 2021), the Court found a lack of minimum contacts because the defendant "ha[d] not sold a single accused product to a [forum] resident." *Id.* at 787. Elephant Projects admits there was at least one sale in the forum, and the volume of U.S. web traffic suggests there were many more. In *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214 (5th Cir. 2012), the defendant's website was available only in the German language and sold German tax preparation programs, so it was clearly not intended

to target Texas or even the U.S. market. Finally, in *Naughtys LLC v. Does 1-580*, No. 21-cv-492-O, 2022 WL 818993, at *7-8 (N.D. Tex. Mar. 3, 2022), the court determined that the defendant lacked minimum contacts with Texas because it had made only a single sale in the state to the plaintiff's agent. The court made this finding, however, after allowing the plaintiff to undertake jurisdictional discovery. *Id.* at *3-5. The parties here have not engaged in jurisdictional discovery, so *Naughtys* is irrelevant.

Ultimately, the test for whether this Court may exercise personal jurisdiction over Elephant Projects boils down to whether Elephant Projects' "conduct in connection with [Texas is] such that it 'should reasonably anticipate being haled into court' in [Texas]." *Shippitsa Ltd.*, 2019 WL 3304890, at *3 (quoting *Latshaw*, 167 F.3d at 211). Elephant Projects could have reasonably anticipated being haled into a Texas court to answer for its online activities. It deliberately offered its products to consumers all over the world, including Texas. *See Ainsworth*, 716 F.3d at 177 (noting that satisfying "stream of commerce" test is enough to establish minimum contacts). Moreover, Elephant Projects knowingly targeted the U.S. market, which included Texas, as evidenced by its English-language website, a public advertisement that it "specializes" in "US Testprep," the volume of its U.S. web traffic (likely enhanced by search engine optimization), and by hosting the testpreptraining.com domain in the United States. "[Elephant Projects] cannot open itself for business to every state in the United States and then feign surprise when it receives [] order[s] from [] resident[s] of one of the states." *Tempur-Pedic*, 758 F. Supp. 2d at 376. "[H]ad [Elephant Projects] wanted to exclude certain jurisdictions, it was able to refuse to deal with certain customers or to turn down any orders after checking customer addresses." *Id.*  Elephant Projects chose not to block sales to Texas residents and thus could have foreseen being called to the courts of a locale where potentially 3% of its customer base resides. Based on these facts, Prep Solutions

has made out a prima facie showing that Elephant Projects has established minimum contacts with Texas to subject it to this Court's jurisdiction.

### 2. Alternatively, Elephant Projects has established minimum contacts with the United States to subject it to personal jurisdiction under Rule 4(k)(2).

Even if the Court were to find that Elephant Projects lacks minimum contacts specifically with Texas, Elephant Projects' extensive contacts with the United States as whole are more than sufficient for the Court to exercise personal jurisdiction under the federal long-arm statute.

Federal Rule of Civil Procedure 4(k)(2)—the federal long-arm statute—authorizes "personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state."[9] *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). For purposes of Rule 4(k)(2), the United States is the applicable forum for the minimum contacts analysis for general and specific personal jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). "The court uses the same legal standards developed in the Fourteenth Amendment context—i.e., the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018).

---

[9] Below is the full text of Federal Rule of Civil Procedure 4(k)(2):

*Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

The plaintiff has the initial burden to "plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability . . . but it [has] no burden to negate jurisdiction in every state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). Once the plaintiff meets that burden through prima facie evidence, the burden shifts to the defendant to either "affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it" or to deny that it has minimum contacts with the United States altogether. *Id.*

Prep Solutions pled Rule 4(k)(2)'s applicability by alleging in the Complaint that all the Defendants, including Elephant Projects, have minimum contacts with "Texas and/or the *United States* . . as necessary to satisfy constitutional requirements of due process."[10] Compl. ¶ 15. Prep Solution's claims arise under federal law (copyright infringement), and Elephant Projects has waived service and not conceded to jurisdiction in another state. Thus, Elephant Projects is subject to personal jurisdiction under Rule 4(k)(2) if it has minimum contacts with the United States to satisfy due process. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 649 (5th Cir. 2004).

Establishing minimum contacts with the United States to satisfy Rule 4(k)(2) is not a high bar. Evidence that a defendant had an expectation that its products would reach the United States market is sufficient. *See Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 663-64 (E.D. Tex. 2011). Prep Solutions has made such a showing.

As already explained, Elephant Projects knowingly offers its products, including the infringing products, through its website directly to consumers throughout the United States without restriction. Elephant Projects knows it is tapping into the United States market as evidenced by the

---

[10] Elephant Projects has also waived personal service of process of the Complaint in accordance with Rule 4(k)(2). *See* Dkt. 14.

fact that it registered and hosts its website in the U.S. and further evidenced by the advertisement on it LinkedIn page stating that it "specializes" in "US Testprep." *See* Ex. 2. Based on the estimated millions of visits to testpreptraining.com from the United States, Elephant Projects has likely made many sales within this country. Google searches performed in the United States further suggest that Elephant Projects may have optimized search engine results to draw more business from U.S. customers. *See* Ex. 2. Finally, the domain for testpreptraining.com is hosted in the United States, which provides better performance for U.S. internet users. *See* Ex. 1, Attachment 1. All of this establishes that Elephant Projects offered its infringing products on its website with the expectation that they would be purchased in the United States, and that such purchases almost certainly have occurred at scale. Based on these facts, Prep Solutions has made out a prima facie case that Elephant Projects has sufficient contacts with the United States for this Court to exercise jurisdiction under Rule 4(k)(2).

> **B.      If the Court finds that Prep Solutions has not established a prima facie case of personal jurisdiction over Elephant Projects based upon the current record, it should grant Prep Solutions leave to conduct jurisdictional discovery.**

Prep Solutions contends that it has made out a prima facie case for personal jurisdiction over Elephant Projects based on its established minimum contacts with Texas or the United States as a whole. But should the Court, after reviewing the pleadings and the record, disagree that Prep Solutions has established a prima face case, Prep Solutions requests that the Court grant leave to conduct jurisdictional discovery so that Prep Solutions can identify specific sales of infringing products that Elephant Projects has made in the United States and Texas.

"A court may grant jurisdictional discovery when the plaintiff makes a 'preliminary showing of jurisdiction' over a defendant." *Harvest Nat. Res., Inc. v. Garcia*, No. CV H-18-483, 2018 WL 2183968, at *2 (S.D. Tex. May 11, 2018) (quoting *Fielding v. Hubert Burda Media,*

*Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). "A preliminary showing is less than a prima facie showing." *Id.* "[I]f a plaintiff presents factual allegations that suggest with *reasonable particularity* the *possible existence* of the requisite contacts[,] the plaintiff's right to conduct jurisdictional discovery should be sustained." *ECAP Holdings, LLC v. Quixotic Farming*, LLC, No. 18-cv-2193-L, 2019 WL 4748126, at *4 (N.D. Tex. Sept. 30, 2019). When the defendant is a corporation, jurisdictional discovery is "particularly appropriate." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

If the Court finds Prep Solutions has not presented a prima facie case for personal jurisdiction, it has at least made a preliminary showing that the Court has personal jurisdiction over Elephant Projects. The estimated volume of web traffic Elephant Projects receives from the United States and the fact that it knowingly made its products available in the U.S. market without restriction suggest that requisite contacts exist for the Court to exercise jurisdiction. Therefore, if the Court finds that Prep Solutions has not established a prima facie case for personal jurisdiction, the Court should grant leave for Prep Solutions to conduct jurisdictional discovery to determine the number of actual sales Elephant Projects has made in the United States and Texas.

## V.      CONCLUSION

For all these reasons, Prep Solutions requests that the Court deny Elephant Projects' Motion to Dismiss the Complaint in its entirety. Alternatively, Prep Solutions requests that the Court deny Elephant Projects' Motion without prejudice and grant leave for Prep Solutions to conduct jurisdictional discovery.

Dated: September 26, 2023

**McKOOL SMITH, P.C.**

/s/ *Joshua W. Budwin*

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**McKOOL SMITH, P.C.**
303 Colorado Street Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Richard Kamprath
Texas State Bar No. 24078767
rkamprath@McKoolSmith.com
Bradley D. Jarrett
Texas State Bar No.
bjarrett@McKoolSmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4210
Telecopier: (214) 978-404

***ATTORNEYS FOR Plaintiff***
***PREP SOLUTIONS LTD.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on September 26, 2023.

/s/ *Joshua W. Budwin*
Joshua W. Budwin